UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

ROBBIN YVETTE MILLER                                    CIVIL ACTION

VERSUS                                                              No. 26-1156

CARRINGTON MORTGAGE SERVICES LLC            SECTION I

ORDER AND REASONS

Before the Court is *pro se* plaintiff Robbin Yvette Miller's ("plaintiff") second motion[1] for a temporary restraining order ("TRO") and preliminary injunction. Defendant Carrington Mortgage Services LLC ("defendant") filed a response in opposition,[2] and plaintiff filed a reply[3] and supplemental memorandum.[4]

For the following reasons, the Court denies plaintiff's motion and dismisses this action for a lack of subject matter jurisdiction.

## I.    BACKGROUND

On May 29, 2026, plaintiff filed a verified complaint and "Emergency Motion for Temporary Restraining Order and Preliminary Injunction."[5] Plaintiff's motion requests that this Court enjoin defendant "from proceeding with any foreclosure sale, sheriff's sale, auction, seizure, eviction, or transfer of title to the immovable property located at 3534 Blair Street, New Orleans, Louisiana 70131" (the "property").[6]

---

[1] R. Doc. No. 9.
[2] R. Doc. No. 13.
[3] R. Doc. No. 15.
[4] R. Doc. No. 11. Plaintiff did not request leave to file a supplemental memorandum. However, the Court accepted plaintiff's additional materials and considered them in rendering this order and reasons.
[5] R. Doc. No. 1.
[6] *Id.* ¶ 6.

1

The Court has previously discussed the factual background of this case in a prior order and reasons.[7] This matter arises out of foreclosure proceedings initiated against the property, which plaintiff inherited from her mother. At the time of her mother's death, the property was encumbered by a "reverse mortgage," a home equity conversion mortgage whereby plaintiff's mother received a line of credit secured against the property.[8] Pursuant to the terms of the mortgage, the lender has the option to require immediate payment of the outstanding loan balance in full when certain events occur—such as the sale of the property or the borrower's death.[9] Similarly, the terms indicate that a failure to pay the balance in full or to negotiate an alternative resolution with the lender, after the lender exercises its option, places the mortgage in default.[10] The parties do not dispute that plaintiff's mother, Celestine Dobbs, signed and agreed to the terms of the loan.

After plaintiff's mother passed away, defendant notified the decedent's estate via letter, on or around September 11, 2024, that a balance of approximately one hundred thousand dollars remained on the reverse mortgage.[11] The letter requested a response by October 16, 2024, and provided alternatives to foreclosure for resolving the default, including: paying off the loan, selling the home without a deficiency judgment, or providing the "[l]ender with a deed-in-lieu of foreclosure."[12] It also

---

[7] *See generally* R. Doc. No. 3.
[8] R. Doc. No. 13-1, at 11.
[9] *Id.* at 12–13.
[10] *Id.* at 12–13, 34–36.
[11] *Id.* at 48–55; *see also Carrington Mortg. Servs., LLC v. Est. of Dobbs*, No. 2025-0728, 2026 WL 1077631, at *1 (La. App. 4 Cir. Apr. 21, 2026).
[12] R. Doc. No. 13-1, at 48–55.

provided contact information for counseling resources, within the United States Department of Housing and Urban Development, available to assist estates in resolving a decedent's reverse mortgage.[13]

However, the default was not resolved and defendant, the current holder of the mortgage note, ultimately initiated foreclosure proceedings through the state court executory process, on January 8, 2025.[14] Shortly thereafter, the state court ruled in favor of defendant in the foreclosure action and issued "a writ of seizure and sale" on March 25, 2025.[15] Plaintiff attempted to halt the state executory process and foreclosure, but she was unsuccessful before both the Louisiana trial and appellate courts.[16] In affirming that the executory process was valid, the Louisiana Fourth Circuit of Appeal noted that the original lender, Reverse Mortgage Funding L.L.C., "assigned its rights in the [n]ote and [m]ortgage" to defendant Carrington Mortgage Services LLC.[17] The state appellate court also found that defendant provided the "authentic evidence" necessary to prove its right to the mortgage, and that plaintiff had in fact received the requisite notice of the property seizure.[18]

Plaintiff subsequently brought the present lawsuit in federal court alleging four causes of action to support her position that defendant's foreclosure on the property was unlawful. First, plaintiff claims that defendant violated due process

---

[13] *See id.* at 52, 54.
[14] *See generally id.* at 2–7.
[15] *See* R. Doc. No. 1 ¶ 13; R. Doc. No. 1-4. *See also* R. Doc. No. 15-3; *Est. of Dobbs*, 2026 WL 1077631, at *1–2.
[16] *See generally id.*
[17] *Id.* at *1.
[18] *Id.* at *2–3.

protections of the Fourteenth Amendment to the United States Constitution, pursuant to 42 U.S.C. § 1983, through its efforts to foreclose on, seize, and sell the property ("count one").[19] Second, plaintiff alleges that defendant violated the procedural requirements of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2605[20] ("count two").[21] Third, plaintiff avers that the clause requiring full payment of the outstanding mortgage on her mother's death was invalid pursuant to the Garn-St. Germain Depository Institutions Act ("Garn-St. Germain"), 12 U.S.C. § 1701j-3, and thus defendant's foreclosure on the property was unlawful ("count three").[22] Finally, plaintiff asserts that defendant lacked standing to initiate foreclosure on the property because it never established a "valid chain of title" ("count four").[23]

Plaintiff's complaint requests temporary and preliminary injunctive relief halting the seizure and foreclosure sale of the property, declaratory relief stating that defendant lacks standing to foreclose on the property, and actual and statutory damages resulting from defendant's alleged "unlawful conduct."[24] Plaintiff's present motion requests preliminary injunctive relief, pursuant to Federal Rule of Civil

---

[19] R. Doc. No. 1 ¶¶ 17–18.

[20] Plaintiff also alleges regulatory violations that are duplicative of, or enforced through, her § 2605 cause of action. *See, e.g.*, 12 C.F.R. § 1024.41(a) ("A borrower may enforce the provisions of this section pursuant to . . . 12 U.S.C. 2605(f)."). Accordingly, the Court will limit its analysis of plaintiff's RESPA claims to the private cause of action provided in § 2605.

[21] *Id.* ¶ 22.

[22] *Id.* ¶¶ 25–26.

[23] *Id.* ¶¶ 28–29.

[24] *Id.* at 6–7.

Procedure 65, and argues that she is likely to ultimately succeed on the merits because defendant's foreclosure on the property was not "valid" and it "violated" the law.[25] Plaintiff asserts that she faces the irreparable loss of her residence[26] and "entire inheritance,"[27] and that because defendant has violated the law and is attempting an "unlawful foreclosure," the balance of hardships and public interest weigh in her favor.[28]

## II.    LEGAL STANDARDS

### a.    *TRO and preliminary injunction*

The purpose of a TRO is to preserve the status quo and prevent irreparable harm until the court makes a final decision on injunctive relief. *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Loc. No. 70 of Alameda Cnty.*, 415 U.S. 423, 439 (1974). TROs[29] and "[p]reliminary injunctions are 'extraordinary remedies' only to be granted when the moving party establishes" the following four elements:

---

[25] R. Doc. No. 9 ¶ 31.

[26] R. Doc. No. 15 ¶ 22. At the time of filing this action, plaintiff stated that she lived in Fort Worth, Texas. *Id.* ¶ 5. Plaintiff has since represented to this Court that she currently resides at the 3534 Blair Street property. R. Doc. No. 15 ¶ 2.

[27] R. Doc. No. 9 ¶¶ 32–33. Contrary to plaintiff's assertion that the property amounts to her "entire inheritance," the succession and judgments of possession that she submitted as proof of her entitlement to the property indicates that she also inherited two additional real estate properties located in New Orleans, two automobiles, three financial accounts, and "[a]ny and all jewelry, finances . . . and all personal belongings" that belonged to her mother. R. Doc. No. 1-2, at 3.

[28] R. Doc. No. 9 ¶¶ 33–34.

[29] TROs and preliminary injunctions are considered under the same standard. *See, e.g., Alvarado v. Noem*, No. 25-1048, 2025 WL 1519124, at *1 (E.D. La. May 28, 2025) (Africk, J.) (utilizing the same four elements to determine if the plaintiff was entitled to a TRO). Accordingly, the authority the Court cites within this section is applicable to both plaintiff's request for a TRO and her request for a preliminary injunction.

(1) a substantial likelihood of success on the merits, (2) a substantial threat of irreparable injury if the injunction is not issued, (3) that the threatened injury if the injunction is denied outweighs any harm that will result if the injunction is granted, and (4) that the grant of an injunction will not disserve the public interest.

*Texas Trib. v. Caldwell Cnty., Texas*, 121 F.4th 520, 525 (5th Cir. 2024).  Plaintiff's failure to meet her burden on any element is enough for the Court to deny the request for a TRO or a preliminary injunction. *See Davis v. Thompson,* No. 19-493, 2020 WL 5775147, at *1 (M.D. La. Sept. 28, 2020) (citing *Roho, Inc. v. Marquis*, 902 F.2d 356, 261 (5th Cir. 1990)) ("If a plaintiff fails to meet his burden regarding any of the necessary elements, the Court need not address the other elements necessary for granting a preliminary injunction."). Moreover, "[c]ourts have wide discretion with respect to whether to grant preliminary injunctions." *Jones v. Gusman*, No. 12-859, 2015 WL 5714619, at *2 (E.D. La. Sept. 28, 2015) (Africk, J.) (citing *Fed. Sav. & Loan Ins. Corp. v. Dixon,* 835 F.2d 554, 558 (5th Cir.1987)).

### b.      *Subject matter jurisdiction*

"Federal courts are courts of limited jurisdiction; without jurisdiction conferred by statute, they lack the power to adjudicate claims." *In re FEMA Trailer Formaldehyde Prod. Liab. Litig.*, 668 F.3d 281, 286 (5th Cir. 2012). Under Federal Rule of Civil Procedure 12(b)(1), "a claim is 'properly dismissed for lack of subject-matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate' the claim." *Id.* (citation omitted). Courts are to consider a Rule 12(b)(1) jurisdictional argument before addressing any other arguments on the merits. *Id.* (citing *Ramming v. United States,* 281 F.3d 158, 161 (5th Cir. 2001)).

When ruling on a Rule 12(b)(1) motion, a court may dismiss an action for lack

6

of subject matter jurisdiction "on any one of three separate bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Spotts v. United States*, 613 F.3d 559, 565–66 (5th Cir. 2010) (quoting *St. Tammany Par., ex rel. Davis v. Fed. Emergency Mgmt. Agency*, 556 F.3d 307, 315 (5th Cir. 2009)). "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction." *Ramming*, 281 F.3d at 161. When a court determines that it does not have subject matter jurisdiction over an action, the action is dismissed without prejudice. *See, e.g., id.*; *Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977).

## III.    ANALYSIS

For the following reasons, the Court finds that it lacks subject-matter jurisdiction, pursuant to the *Rooker-Feldman* doctrine,[30] over plaintiff's § 1983 claim (count one), her Garn-St. Germain claim (count three), and her challenges regarding the sufficiency of the state court executory process (count four). Similarly, the Court finds that plaintiff lacks standing to pursue her RESPA claim (count two) against defendant. As such, the Court will deny plaintiff's motion for preliminary injunctive relief and dismiss her complaint against defendant.

### a.    *Rooker-Feldman Doctrine*

Defendant advances various arguments for denying plaintiff's motion, chief among them is that this Court lacks subject matter jurisdiction over plaintiff's claims

---

[30] *See Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983).

pursuant to *Rooker-Feldman*. Defendant argues that because a state court has already permitted it to proceed with the foreclosure process and denied the same injunctive relief that plaintiff now seeks in federal Court, her federal lawsuit amounts to an impermissible collateral attack on the state court's prior decision.[31] Plaintiff counters that her injury "flows independently from [d]efendant's own conduct."[32] However, she also readily admits that a decision in her favor from this Court "would undermine[] the validity of[] any state court judgment [d]efendant relies upon."[33]

For the foregoing reasons, the Court agrees with defendant that *Rooker-Feldman* precludes this Court from exercising jurisdiction over any claims seeking to invalidate the state court judgment against her, namely counts one, three, and four of her complaint. However, the Court finds that *Rooker-Feldman* is inapplicable to count two, plaintiff's RESPA claims.

Pursuant to the *Rooker-Feldman* doctrine, "federal district courts lack jurisdiction to entertain collateral attacks on state court judgments." *Liedtke v. State Bar of Texas*, 18 F.3d 315, 317 (5th Cir. 1994). The doctrine "deprives federal courts of subject matter jurisdiction to review a final state court decision arising out of a judicial proceeding unless a federal statute specifically authorizes such review." *Pease v. First Nat'l Bank*, 335 F. App'x 412, 415 (5th Cir. 2009). If a state court errs in judgment, the judgment must be "reviewed and corrected by the appropriate state appellate court. Thereafter, recourse at the federal level is limited solely to an

---

[31] R. Doc. No. 13, at 8–9.

[32] R. Doc. No. 15 ¶ 17.

[33] *Id.*

application for a writ of certiorari to the United States Supreme Court." *Id.* (citations omitted).

Here, plaintiff's claims are the "paradigm" example for which *Rooker-Feldman* precludes federal jurisdiction: "[s]he does not like the result reached in state court and 'repaired to federal court to undo the [state] judgment in [her] favor.'" *T. M. v. Univ. of Md. Med. Sys. Corp.*, 146 S. Ct. 1739, 1748 (2026) *(*quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 293 (2005)). She asks the Court to find that the executory proceedings violated her Due Process rights, that the terms of the mortgage agreement are unlawful and unenforceable pursuant to the Garn-St. Germain Act, and that defendant lacked standing to initiate foreclosure on the property. As such, her claims are "inextricably intertwined" with the state court judgment because her requested relief is that this Court intervene to provide injunctive and declaratory relief "that would allow [her] to retain, or reclaim, possession" of the property, negating the "preexisting state judgment" granting defendant's petition for executory process. *See Salinas v. U.S. Bank Nat. Ass'n*, 585 F. App'x 866, 867 (5th Cir. 2014) (finding that *Rooker-Feldman* applied because plaintiff sought to "attack collaterally and to seek enjoinment of a preexisting state judgment" through a federal lawsuit that "implicat[es] the validity of the state foreclosure judgment," and reasoning that such the federal proceedings are "'inextricably intertwined' with the state court's judgment"); *Magor v. GMAC Mortg., L.L.C.*, 456 F. App'x 334 (5th Cir. 2011) (same).

9

Notably, "[a] party seeking federal review of a state court foreclosure proceeding is not uncommon, and courts in this circuit have consistently held that claims such as [p]laintiff's are barred by the *Rooker-Feldman* doctrine because subject matter jurisdiction is lacking." *Thomas, Tr. for Derrick Thomas Tr. v. Sticker*, No. 25-289, 2025 WL 1170725, at *3 & n.36 (E.D. La. Apr. 22, 2025) (Morgan, J.) (collecting cases). Beyond direct attacks on the legitimacy of state foreclosure judgments, courts have found that plaintiffs may not, as plaintiff attempts here, circumvent *Rooker-Feldman* by alleging procedural due process claims pursuant to § 1983. *See Batista v. Carter*, 796 F. App'x 209, 210 (5th Cir. 2020) (citing *Liedtke*, 18 F.3d at 317–18) ("When a § 1983 suit is 'inextricably intertwined' with a state-court judgment such that the suit is, essentially, an attack on that judgment, district courts lack original jurisdiction over the suit."). Furthermore, *Rooker-Feldman* precludes plaintiff's attempt to use an alleged violation of Garn-St. Germain, which she argues invalidates defendant's authority to foreclose on the property, to obtain relief from the state executory proceedings. *See Morris v. Am. Home Mortg. Servicing, Inc.*, 443 F. App'x 22, 24 (5th Cir. 2011) (finding an otherwise independent federal claim brought pursuant to the Fair Debt Collection Practices Act was barred pursuant to *Rooker-Feldman* "because, crucially, the only relief he sought was the setting aside of the state foreclosure judgment and staying of the execution of the writ of possession").

However, *Rooker-Feldman* does not bar plaintiff's RESPA claims because she alleges unlawful conduct and requests statutory money damages that are

10

independent from the state executory process.[34] *See Truong v. Bank of Am., N.A.*, 717 F.3d 377, 383 (5th Cir. 2013) (reasoning that *Rooker-Feldman* was inapplicable because the plaintiff raised "independent claims . . . [that] did not seek to overturn the state-court judgment," and because "the damages she requested were for injuries caused by the banks' actions, not injuries arising from the foreclosure judgment").

The "*Rooker-Feldman* doctrine . . . is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *See Univ. of Maryland Med. Sys. Corp.*, 146 S. Ct. at 1748 (quoting *Exxon*, 544 U.S. at 284). Plaintiff's § 1983 claim (count one), Garn-St. Germain claim (count three), and her challenges regarding the sufficiency of the state court executory process (count four) necessarily require that the executory proceedings be "re-opened and re-litigated in federal court and, ultimately, [she] seeks to nullify the state-court judgment averse to her." *See Turner v. Chase*, 334 F. App'x 657, 660 (5th Cir. 2009). Accordingly, these claims are "inextricably intertwined" with the state-court judgment such that they are essentially an attack on that judgment and must be dismissed for a want of subject matter jurisdiction. *See Batista*, 796 F. App'x at 210.

---

[34] RESPA provides statutory damages in the amount of "any actual damages to the borrower . . . [and] any additional damages, as the court may allow . . . in an amount not to exceed $2,000," for each violation of the act. 12 U.S.C. § 2605(f)(1). To the extent plaintiff seeks relief implicating the executory process on the property for her RESPA claims, such claims would be barred pursuant to *Rooker-Feldman*. *See Morris*, 443 F. App'x at 224.

11

### b.    Standing

Although *Rooker-Feldman* does not preclude this Court's jurisdiction over plaintiff's RESPA claims, the Court identifies a different jurisdictional deficiency—standing,

Federal courts are courts of limited jurisdiction, and federal jurisdiction is limited to cases and controversies where "the party invoking federal jurisdiction [has] standing—the 'personal interest that must exist at the commencement of the litigation.'" *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 733 (2008) (quoting *Friends of Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 189 (2000)). "A preliminary injunction, like final relief, cannot be requested by a plaintiff who lacks standing to sue . . . . At the preliminary injunction stage, the movant must clearly show only that each element of standing" is satisfied. *Speech First, Inc. v. Fenves*, 979 F.3d 319, 329–30 (5th Cir. 2020). A court must, where necessary, address standing *sua sponte*, even if neither party has contested the issue. *Adarand Constructors, Inc. v. Mineta*, 534 U.S. 103, 110 (2001).

To establish standing, a plaintiff must have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016). The alleged injury must be "'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). Failure to establish one element alone is enough

12

to find that a plaintiff lacks standing. *Louisiana v. Biden*, 64 F.4th 674, 684 (5th Cir. 2023).

Plaintiff's RESPA claims are deficient with respect to all three elements of standing. She alleges a private cause of action, created by the statute, whereby "[w]hoever fails to comply with [the requirements of the section] shall be liable to the *borrower* for each such failure." 12 U.S.C. § 2605(f) (emphasis added). Similarly, each of the procedural duties that plaintiff claims defendant violated are owed to the *borrower*. *See, e.g.*, § 2605(c) ("Each transferee servicer to whom the servicing of any federally related mortgage loan is . . . transferred shall notify the borrower . . .");[35] § 2605(e) ("If any servicer . . . receives a qualified written request from the borrower . . . the servicer shall provide a written response . . ."). Therefore, "[i]n order to recover for a violation, a *borrower* must show 'actual damages to the *borrower* as a result of the [servicer's] failure' to comply with RESPA." *Law v. Ocwen Loan Servicing, L.L.C.*, 587 F. App'x 790, 795 (5th Cir. 2014) (emphasis added) (quoting § 2605(f)(1)).

Per the terms of the mortgage note, plaintiff is not a "borrower" to whom defendant, the loan servicer, owed any duties.[36] The only "borrower" to whom defendant was obligated was plaintiff's mother.[37] As such, plaintiff in her individual

---

[35] Plaintiff alleges that defendant violated § 2605(b). However, § 2605(b) applies to a servicer that transfers a loan to a subsequent party. This claim is more appropriately analyzed as an alleged violation of § 2605(c), which applies obligations similar to those in § 2605(b) to servicers, like defendant, that were on the receiving end of a loan transfer.

[36] *See* R. Doc. No. 13-1, at 11 ("'Borrower' means each person signing at the end of this Note. The term does not include his or her successors or assigns."); *id.* at 14 (reflecting that Celestine Dobbs signed above the line denoting her as "Borrower.").

[37] *Id.*

capacity could not have suffered an injury in fact stemming from defendant's alleged RESPA violations. Nor would paying monetary damages to plaintiff redress the injuries caused by defendant's alleged violations, as such damages would have been owed to her mother, not plaintiff.

Furthermore, the injuries that plaintiff complains of are purely procedural and alone are "insufficient to create Article III standing." *Louisiana*, 64 F.4th at 683 (citing *Summers v. Earth Island Inst.*, 555 U.S. 488, 497 (2009)). A plaintiff does not "automatically satisfy[y] the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Spokeo, Inc.*, 578 U.S. at 341. "Article III standing requires a concrete injury even in the context of a statutory violation." *Id*. With respect to violations of § 2605, the requirements of Article III standing and the elements of a private cause of action pursuant to the statute both require an actual injury. *See Diedrich v. Ocwen Loan Servicing, LLC*, 839 F.3d 583 (7th Cir. 2016) (finding that for a § 2605 claim "[t]he injury must be 'actual,' both for standing purposes and for purposes of the statute"). An actual injury in these circumstances is the harm the borrower actually suffers as a result of the servicer's procedural violation. *See Law*, 587 F. App'x at 795 (reasoning that a servicer's alleged violation of § 2605(c) causing a plaintiff to suffer foreclosure because they sent loan payments to the wrong servicer establishes an actual injury); *Diedrich*, 839 F.3d at 590 (finding that allegations the plaintiffs "suffered damage to their credit" and were "forced to pay . . . more money and higher interest rates" because of the servicer's alleged violation of § 2605(e) is an injury in fact). Plaintiff's

allegations are insufficient to establish standing because although she claims that defendant violated § 2605's procedural requirements, she has not claimed to have suffered any actual harm stemming from the violation.

## IV.  CONCLUSION

Accordingly, as plaintiff lacks standing to bring her RESPA claims and her remaining claims are precluded due to *Rooker-Feldman*, the Court concludes that it lacks subject matter jurisdiction over the instant action in its entirety. The Court will therefore dismiss all of plaintiff's claims against defendant, and it need not reach the merits of plaintiff's request for injunctive relief. *See Carver v. Atwood*, 18 F.4th 494, 497 (5th Cir. 2021) ("*sua sponte* dismissal is mandatory when a court discovers that it lacks subject-matter jurisdiction") (citing Fed. R. Civ. P. 12(h)(3)).

For the preceding reasons,

**IT IS ORDERED** that plaintiff's motion[38] for a temporary restraining order and preliminary injunction is **DENIED**.

**IT IS FURTHER ORDERED** that all of plaintiff's claims[39] against defendant are **DISMISSED WITHOUT PREJUDICE** for a lack of subject matter jurisdiction.

New Orleans, Louisiana, July 16, 2026.

_____
LANCE M. AFRICK
UNITED STATES DISTRICT JUDGE

---

[38] R. Doc. No. 9.
[39] R. Doc. No. 1.

15